Good morning My name is Ralph Hurwitz. It's my privilege to be here this morning to argue on behalf of Sylvester Alderman. Mr. Hurwitz, we have the first degree theft issue, but your case, unlike the Beasley case, has the additional four-level adjustment issue. What I may want to do is to call upon Ms. Tenney, after you make your argument, to see what she would add with respect to the first. We can't combine the two cases because you have the extra issue, but why don't you go ahead and take it from there. All right. If I understand your honor, would you like me to begin with the Begay issue? Either way, that's fine. Could I ask you a question about the adjustment? The theory is that, if I understand your theory correctly, that there isn't any evidence sufficient for the sentencing enhancement that Alderman put Montgomery in fear. Montgomery was the guy that was beating Alderman up. Right. I watched the video, the surveillance camera video, on the DVD that was in the record, and what it looked like to me, you tell me if I'm misinterpreting it, it looked like Montgomery was beating Alderman up, and then Alderman pulled back from him far enough to be physically separated, he hitched up his pants, he pulled out his 9mm and he started shooting at Montgomery. Montgomery ran, and then he ran around the car with Alderman chasing him around the car shooting at him. Did I see that right? You sure did. Have I got the right case? Absolutely. Why wouldn't the fact that a man is shooting at him with a 9mm and he's running away from the 9mm be sufficient evidence to show that he was put in fear? I must be missing the argument. No, I don't think you're missing it, Your Honor. I think the key to the argument is this, that there is a difference between wanting to avoid being shot and being in fear. I'd be pretty scared if somebody was shooting at me. So would I, but the question is not whether you or I would be, the question is whether Mr. Montgomery was. Well, let's fly off his chest or what? Well, it's not that. What I would suggest is this, is that the test... I don't understand the difference. I mean, if you're trying to avoid being shot, it's because you fear that you may get shot. Well, I wouldn't necessarily use the word fear, Your Honor. I know that each of us here may well have been fearful, and had Mr. Montgomery in any way expressed fear... Still, he's not running toward the gun, he's running away from it. I don't get it. I think the fact that Mr. Montgomery is trying to avoid being shot... Means he thinks he may get shot if he doesn't avoid getting shot. And you think fear has some other content than, if I don't do something, I'm going to get shot? I do. Such as? Well, fear to me, Your Honor, has a strong emotional connotation. Fear is not simply a desire to avoid a certain outcome. And I think that's where the difference is. Had Mr. Montgomery articulated any expression of fear, I think it would be reasonable to conclude that his apprehension was reasonable, which is the other part of that test. So your argument is that because he didn't say he was in fear, that therefore he must not have been in fear? I don't understand that argument. Not that he must not have been. It's that he may or may not have been. I mean, I... Is this a burden issue that the government has to show that the target was not in fear? No. No. The government, or the prosecutor, this would have been a state court prosecution in Washington. The prosecutor in proving an assault that was neither a battery nor an attempted battery, and I would note that Judge Peckman did not find that it was an attempt to injure Mr. Montgomery, only an attempt to scare him. That's in her findings. And... It looked like it worked. He stopped beating Alderman up. Mm-hmm. Agreed. But... I'm still missing it. I mean, it looked to me like each of them was afraid of something. Alderman was afraid of two things, getting beat up and having his pants fall down, and Montgomery was scared of getting shot. It's the only way I can explain their behavior. You're hitching up his pants before he draws his gun, and I think you're drawing a fine distinction about the emotion of fear versus a wish to avoid a consequence, and it seems a little too gossamer to me. I mean, you avoid a consequence because you're afraid of it, even though you may be a real tough guy and want to say, I'm not afraid of nothing. That may be the case. Well, put it another way. Do you have any Washington... This is a Washington conviction? Yes. I mean, Washington law, that draws this distinction you're trying to make? Not specifically, other than looking at the pattern jury instruction, which is where I got the language that I argued in the brief, and I recall back... What is it? What's the language? The language when one does not have either a battery or an attempted battery. The language is, and this is in pattern instruction 35.50. Okay. What's the language? Okay. The language is, I'm finding it here, an act done with unlawful force, we've got that, done with intent to create in another the apprehension and fear of bodily injury. Judge Peckman found that. And which, in fact, creates in another a reasonable apprehension and fear, imminent fear of bodily injury, even though the actor did not intend to inflict bodily injury. And you're saying we can't make a presumption that if you're the target and someone is shooting you nine times that you're not going to be in fear? Right. I'm saying that may be the case, but we cannot assume it. I see. Counsel, you've only got three minutes left. You've got to get to your main issue here. Tell me why the eustem generis approach that the Supreme Court endorsed in Begay doesn't put Alderman on the wrong side of the crime of violence issue. Begay was drunk driving. Right. And they said apply a eustem generis to burglary of a dwelling, arson, or extortion, or involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. The theft from a person, Wofford and our other case say it's that kind of crime because it's from the person, and it creates a risk of violent confrontation. It struck me that applying a eustem generis, well, that's the same problem as burglary of a dwelling. Burglary of a dwelling, the homeowner is likely to pull out his gun and start protecting against the burglary. Why doesn't the eustem generis in Begay mean that Wofford is still good law? Because if one were to look at the, what we call the residual part of the statute, it's not that the statute intends that any, the statute being that which defines a violent offense. Any situation where there is a risk of injury to another person. If that were the case, I don't think. No, it doesn't. No risk. Right. The crime itself has to present. Exactly. At some likelihood of physical harm from the crime. According to Begay, the crime has to be purposeful, violent, and aggressive. I mean, it wasn't just a general, you know, company keeps it. They made a specific interpretation. So the question is, is this crime purposeful, violent, and aggressive? And aggressive. And we also have a case that has to be all three. And, Your Honor, not only purposeful, violent, and aggressive, which may or may not be the case, but in addition, it has to be of the same kind. But that's how they defined of the same kind. They said this is the kind. So it's purposeful, violent, and aggressive is the kind. Well, I would disagree that that is the kind, Your Honor, because otherwise there would be no need for this kind of specific enumeration of burglary and arson and extortion. That's what the Court inferred from the enumeration. And there's a reason why they said that. They said, well, how are these all similar? They're all purposeful, violent, and aggressive. They are. But I think that the fact that there is the enumeration requires ‑‑ Sir, are you saying that if we use that standard, you lose? Pardon? You're saying that you can't demonstrate that this crime is not purposeful, violent, and aggressive, so you would try to do something else? I'm trying to understand why you're avoiding that. Why I'm avoiding? Why you're avoiding that instruction and trying to say, no, it's something else. Well, because if it were the case that the Congress wanted to include any offense which was purposeful, violent, or aggressive, I think Congress means what it says. So you're saying that if that is the standard, you can't meet it. Is that what you're saying? That's correct. If Jennings is still good law, I lose. But Jennings didn't use purposeful, violent, and aggressive. Right. Thank you, counsel. We have time for one more. Thank you. Thank you. We'll hear from the government. We spent a lot of time on the other issue, so I thought we'd better go ahead and just treat this as a separate case, and then we'll hear the other case which raises the gay issue. Go ahead, counsel. Thank you, Your Honor. May it please the Court. My name is Michael Morgan. I represent the government on this appeal. Just to clarify, the Court is interested only in the four-point enhancement. No, no, no. Feel free. It's fine. Okay. Well, I will start where the Court began, which was with the four-point enhancement. And respectfully, review of the DVD of the surveillance video, as the Court seems to have recognized, really puts to rest any notion that the district court could not have found, by a preponderance of the evidence, that Mr. Montgomery did not have a reasonable apprehension of fear and didn't Well, first of all, who had to find it, the district court or the state court? Well, in this particular context, I would say it's the district court because the question was whether or not at the time he committed, he used the firearm, which is the target of the federal crime, in the commission of a felony. So the government's position was that when he possessed that firearm and then turned around and used it against Mr. Montgomery, he was using it in the commission of a felony. He was never charged with that felony in state court. So it would be the district court at sentencing that would need to make that finding. And as I understand the defense's argument, it seems to be something along the lines that, while conceivably the court could find that he had a reasonable apprehension of fear, that absent some sort of objective manifestation that I am afraid, the district court could not find, as a factual matter, that Mr. Montgomery had that fear. And I would just point out that that is flatly inconsistent with Washington law on the subject. The Washington Supreme Court has said that a court may presume that a victim has a subjective apprehension of fear if a loaded firearm is pointed at him. That's been the law in Washington since the late 60s. So as a matter of state law, there is clearly a basis for the court to make that finding. If the Court has no further questions on that topic, I'll turn to the Begay issue. I would submit that Begay is simply a refinement of the means in which we're supposed to apply the residual clause. And to understand that, it's necessary to remember the crime was at issue in Begay. It was driving while intoxicated. And what the Court was made clear in its holding was that that was a crime that was essentially strict liability. So it had really no intent element whatever. And the crime posed a general risk to the populace, which I think everyone agrees on fighting does, but by its nature, really required no intent on the part of the public. But did specifically, Begay did reject the mode of analysis that we used in Wofford and Jennings, which was quite specifically because we looked only at whether the risk was similar, and they said that isn't sufficient. Respectfully, I think that might be a somewhat crabbed interpretation of Wofford and Jennings. I mean, to be sure, neither case tried to parse it out in Begay-type language. But the mode of analysis that the Court implied, especially in Wofford, I would submit is similar, but in that you looked at the crime, and in Wofford, the Court took great pains to note that the crime involved a direct physical confrontation with the victim. Wofford says our task is to assess whether grand theft from a person viewed categorically involves the same sort of risk as crimes like generic burglary, arson, or extortion. That's what it said it was doing, which is exactly what Begay says is not enough. Well, I agree that when you quote that language, that the Court was focusing on risk. But in the antecedent paragraph, because there's two paragraphs that ultimately wind up the sum of the Wofford analysis, when the Court is describing the nature of the crime, theft from the person, when it's describing how that risk, the risk that is essentially the same risk that's inherent in burglary, why does that risk arise? Because the type of conduct that's at issue, it's a direct confrontation with the victim. That is what generates the risk. And I would submit that when we look at Begay and we look at the modifiers that Begay has, the modifying language Begay used, the purposeful, violent, and aggressive language, that has to be interpreted in view of the four antecedent crimes, namely that to fall within the residual clause, a crime has to be violent, aggressive, and purposeful in the same manner. That raises a question that I had about Begay. I'm concerned about whether that phrase in the Supreme Court opinion, the listed crimes all typically involve purposeful, violent, and aggressive language, has to be read in a very liberal way. My concern is based on burglary of a dwelling, as they call it. I think most statutes call it burglary in a dwelling. From the burglar's point of view, the ideal burglary in a dwelling doesn't involve any violence. That's correct. Hopefully the homeowners won't be there unless it's a home invasion burglary. And if they are there, hopefully they won't resist. It's not like an armed robbery. So I wonder if the Supreme Court can possibly mean what it says here, unless we interpret what it says to mean something like risk of violence or likelihood of interpersonal violence as opposed to actually violence, since most burglary in a dwelling is not violent. That is a way to interpret it. I personally would urge that you would interpret those phrases simply in context of Begay itself. Again, Begay was a crime that essentially was strict liability. And they used those modifiers to sort of... It was drunk driving. Drunk driving. And they used that modifying language to show what drunk driving was not. It was neither purposeful violence or aggressive. It was, again, a strict liability crime. When you... Those modifiers have to be interpreted in light of before exemplar crimes. And the Court is correct that burglary, when you think about it, is not violent in the generic sense of what we would, I think, the common sense meaning of violent. But it's violent in the sense that it is a crime directed at a specific target, the property of the owner. And by doing so, it creates a risk of violence may ensue. And that's the kind of purposeful violence and aggressive conduct we're talking about. It's got to be conduct that's targeted toward a victim or a specific item of property of the victim. And that is what theft from the person does. Because since the property must be on the victim's person, you're guaranteeing an encounter between the victim and the assailant. Actually, you're not. I mean, because as I understand this crime, I was recently on a trip where a friend was wearing a backpack and somebody came in and took a camera out of the back part of the backpack. That would meet this crime, but he didn't even know what was happening. Well, I mean, when I say it's an encounter, I'm talking in the sense that there is an encounter. Sure, the thief is hoping that he's going to go undetected, just as the burglar is hoping he's going to go undetected. Nevertheless, I don't think anyone would dispute. Ultimately, this crime is pickpocketing, usually. Now, I understand that the facts of this case are entirely different, but everybody agrees that the quintessential version of this crime is pickpocketing. Pickpocketing or snatching, yes. I would guess most of them are pleaded down from robbery. Do you know if that's true? I know that in Mr. Beasley's and Mr. Olderman's case, that was certainly true. I mean, yes, it's a lesser-included offense of robbery, and it's an easy plea down. If you don't want to – if you're plea bargaining the robbery, this is an easy one to please. Well, straight up theft from a person that isn't a robbery would pretty much need pickpocketing. I believe that's – I mean – It's likely to be violent if you happen to feel the person's hand in your pocket. Exactly, and that is sort of the issue here, is that, again, it's a burglary – again, the victim of the burglary, if the burglar is successful, is going to not be aware of the crime until it's completed. It's the same thing with theft of the person. But nevertheless, no one – I mean, the Supreme Court even could give – Burglary of a dwelling. In my town, most of the – most couples, both of them work, and most of the burglary and dwellings are in the afternoon rather than other times of day. Best time to catch everybody out. That's correct. A burglary of a dwelling doesn't require that you forcibly go in. It only requires that you go in unprivileged. So if the door is open, you go in and still burglary. That's correct. I mean, so there's no violence in the sense that the entry itself must be violent. I mean, and I think – But ultimately, what I was trying to say was that – what Begay is trying to figure out is whether this is a kind of crime that Congress would have thought is such that somebody having – who has a gun is going to be more dangerous, essentially. In other words, it's somehow linked to a gun – that a person who later has a gun and is a felon with this is a dangerous person. I mean, they sort of were looking backwards, it seems to me. And it does seem a little far-fetched to say that about a pickpocket. Well, to the extent that you have an armed pickpocket, I would suggest that there's no guarantee that your pickpocket is not going to be armed. And the same in the way that you have a burglar, there's no guarantee your burglar is not going to be armed. The risk is that if you happen to be armed, that is going to increase the risk to – that's the kind of violent felon you're talking about here. And I would, again, submit that the risk essentially is the same. And I don't even think that the Court's really concerned about the risk so much as we're all hung up on Begay's use of this three-term modifier. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument next in a somewhat similar case, United States v. Beasley.
judges: O'scannlain, Kleinfeld, Berzon